**REVISED**

United States Court of Appeals,

Fifth Circuit.

No. 95-60789.

Frank JACKSON, Petitioner-Appellant,

v.

James V. ANDERSON, Superintendent, Mississippi State Penitentiary, Respondent-Appellee.

May 20, 1997.

Appeal from the United States District Court for the Southern District of Mississippi.

Before BARKSDALE, EMILIO M. GARZA and BENAVIDES, Circuit Judges.

BENAVIDES, Circuit Judge:

Frank Jackson, a Mississippi state prisoner, appeals the denial of federal habeas corpus relief. He argues that he was illegally sentenced to life imprisonment as an habitual offender because the prosecution failed to prove that he had served separate terms of at least one year on each of his two prior felony convictions as required by Miss.Code Ann. § 99-19-83.[1] We affirm.

---

[1]In pertinent part, § 99-19-83 provides that:

> Every person convicted in this state of a felony who shall have been convicted twice previously of any felony or federal crime upon charges separately brought and arising out of separate incidents at different times and who shall have been sentenced to and served separate terms of one (1) year or more in any ... penal institution ... and where any one (1) of such felonies shall have been a crime of violence shall be sentenced to life imprisonment, and such sentence shall not be reduced or suspended nor shall such person be eligible for parole or probation.

1

In 1972, Jackson was convicted of mayhem and received a three-year suspended sentence with five years of probation. In 1976, while still on probation, Jackson pleaded guilty to manslaughter and was sentenced to 20 years imprisonment.[2] Subsequently, during his incarceration for manslaughter, Jackson's probation (for mayhem) was revoked. He was sentenced to three years to run consecutively to his 20-year manslaughter sentence. After serving a total of six years, nine months, and twenty-eight days for the manslaughter and mayhem convictions, Jackson was released on parole in 1981. In 1983, he was convicted of the instant offense of burglary of a dwelling and sentenced to life imprisonment without parole as an habitual offender.

On Jackson's direct criminal appeal he argued that the prison records "showed the time he served covered one period of confinement" and therefore he had been illegally sentenced as a violent habitual offender under § 99-19-83. The Mississippi Supreme Court opined:

> that § 99-19-83 was not violated [because Jackson] was convicted twice previously of felonies which were brought and arose out of separate incidents at different times and was sentenced to and *did serve one or more years on each offense,* one of which (in this instance both crimes) was a crime of violence.

*Jackson v. State,* 483 So.2d 1353, 1356-57 (Miss.1986) (emphasis added). To make this determination, the Mississippi Supreme Court relied on the testimony of Christine Houston, the Director of

---

[2]Initially, Jackson was convicted of capital murder and was sentenced to death. The Mississippi Supreme Court reversed and remanded, establishing procedures for a bifurcated hearing in capital cases. *Jackson v. State,* 337 So.2d 1242 (Miss.1976).

Records for the Department of Corrections. Houston testified that Jackson served five years of his twenty-year sentence for manslaughter and one year, nine months, and twenty-eight days for his three-year sentence for mayhem. *Id.* at 1356. The newly amended federal habeas statute "retain[s] the traditional presumption of correctness afforded to state court factual determinations." *Childress v. Johnson,* 103 F.3d 1221, 1225 (5th Cir.1997) (28 U.S.C. § 2254(e)(1)). The amended statute apparently places a more onerous burden on the petitioner in that the petitioner must now rebut the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).[3] Further, section 2254(d)(2) prohibits granting the writ in regard to any claim adjudicated on the merits in state court unless the adjudication of that claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

Jackson challenges the conclusion that he became eligible for parole after he had served five years or *one-fourth* of his 20-year manslaughter sentence, arguing that under the version of the parole statute in effect at the time of his parole,[4] a prisoner was required to serve at least *one-third* of his sentence before becoming eligible for parole. Jackson contends that he was

---

[3]The previous statute provided that "the burden shall rest upon the applicant to establish by convincing evidence that the factual determination by the State court was erroneous." 28 U.S.C. § 2254(d).

[4]Miss.Code Ann. § 47-7-3 (1981).

3

required to serve one-third (six years and eight months) of the 20-year sentence, which left only one month and twenty-eight days to be attributed to the consecutive mayhem sentence. He therefore argues that he could not have served one year on the mayhem conviction.[5]

It is undisputed that Jackson served a total of six years, nine months, and twenty-eight days before he was paroled from his imprisonment for the manslaughter and mayhem convictions. The obvious flaw in Jackson's analysis is that if he served six years and eight months on the manslaughter conviction, then he would have served only one month and twenty-eight days on his mayhem conviction at the time he was actually paroled. If Jackson's analysis is applied to the mayhem sentence, then he would have had to serve one year (one-third) of his three-year manslaughter sentence before being eligible for parole. In other words, Jackson's calculations would have required him to serve a total of seven years and eight months[6] before being eligible for parole. Because he was paroled prior to serving that amount of time, Jackson's argument is unavailing. Indeed, his argument highlights the fact that the question is not how much time he *should* have served under the applicable parole statute, but rather, how much

---

[5]The State has not raised the procedural default bar on appeal. Because the State waived this bar, we decline to reach it. *See Reddix v. Thigpen,* 805 F.2d 506, 512 (5th Cir.1986).

[6]Manslaughter time of six years and eight months plus mayhem time of one year equals seven years eight months.

time he *actually* served (emphasis in original).[7]

In any event, we need not determine exactly how the Mississippi Corrections Department computed the time attributed to each of Jackson's sentences because "[w]e will take the word of the highest court on criminal matters of [Mississippi] as to the interpretation of its law." *Seaton v. Procunier,* 750 F.2d 366, 368 (5th Cir.), *cert. denied,* 474 U.S. 836, 106 S.Ct. 110, 88 L.Ed.2d 90 (1985). "[W]e do not sit to review that state's interpretation of its own law." *Id.* Because the state court's finding that Jackson served "one or more years on each offense" was not based on an unreasonable determination of the facts presented at the state court proceeding, we are prohibited from granting relief.

Jackson also argues that he was denied effective assistance of counsel because counsel allowed Houston to erroneously testify regarding the time he served on the manslaughter and mayhem

---

[7]The dissent determines that, as a matter of law, Jackson actually served six years and eight months on the manslaughter conviction, the first period of confinement, and one month and twenty-seven days on the mayhem conviction, the second period of confinement. The dissent's analysis proves too much. If this is a legal question, as opposed to a fact question, then that legal determination would also mean that Jackson served at least one year on the mayhem conviction. Of course, because Jackson served only six years, nine months, and twenty-eight days, both of those conclusions cannot be correct. Under the dissent's analysis, one of those conclusions must be false. In light of the burden that is on Jackson, it is puzzling that the dissent assumes that the mistake occurred with respect to the calculation of parole eligibility on the second period of confinement. It is equally plausible that such a mistake could have occurred in calculating Jackson's parole eligibility for his manslaughter conviction, the first period of confinement. Because either scenario is equally plausible, it cannot be said that the state court's decision was based on an unreasonable determination of the facts presented at the state court proceeding.

sentences. Trial counsel was not responsible for the testimony of Houston and was not unprofessional with respect thereto. Moreover, Jackson failed to establish that Houston's testimony was erroneous. Because we have rejected Jackson's claim on the merits, we likewise reject Jackson's claim of ineffective assistance that is based on the same argument.[8]

AFFIRMED.

EMILIO M. GARZA, Circuit Judge, dissenting:

In this case, a Mississippi circuit court relied on an unambiguous legal error by a prison system official to make an incorrect factual finding, and thus sentenced Jackson under the wrong penal statute. Because Jackson's illegal sentence violates his rights under the Due Process Clause of the Fourteenth Amendment, he is entitled to habeas relief unless the state court resentences him under the correct provision of the Mississippi Code. Accordingly, I dissent.

I

Jackson could only have been sentenced to life without possibility of parole under § 99-19-83 for his burglary conviction if he had previously been "sentenced to *and served* separate terms of one (1) year or more" for two different felonies. MISS.CODE ANN. § 99-19-83 (1983) (emphasis added).

Before his burglary conviction, Jackson had been convicted of manslaughter and mayhem, both felonies, and was sentenced to twenty

---

[8]Jackson also argues that his illegal sentence constitutes an *ex post facto* violation. Because he raises this for the first time on appeal, we will not review it.

years for the first conviction and three years for the second.  The three-year mayhem sentence was to run *consecutively* to the manslaughter sentence.  At the time the state released Jackson on parole from these two convictions, Mississippi law required any prisoner who was sentenced "for a definite term or terms of one (1) year or over" to "serve[ ] not less than one-third (1/3) of the total of such term or terms."  MISS.CODE ANN. § 47-7-3 (1981).[1]

Upon his release, Jackson had served a total of six years, nine months, and twenty-eight days for the two convictions. Christine Houston, the Director of Records for the Department of Corrections ("DOC"), testified at the sentencing hearing after Jackson's August 1983 burglary conviction as to the allocation of this time between the convictions.  The following colloquy occurred between Houston and the district attorney:

Q: And how long did [Jackson] actually serve in the custody of the State Department of Corrections?

A: He served six years, 9 months and 28 days prior to being released on parole on September 24, 1981.

Q: And what credit on each one of these charges, the manslaughter and the mayhem, did he obtain?

A: He was required to serve five years on the 20 year sentence of manslaughter prior to parole eligibility.  He served one year, nine months and 28 days on the three year sentence.

Q: That would be on the mayhem?

A: On the mayhem charge.

Q: So, is it your testimony that he served more than one year in the Department of Corrections on each of these charges, manslaughter and mayhem?

---

[1]This provision took effect April 3, 1981.  Jackson was paroled on September 24, 1981.

7

A: Yes, sir.

Houston's testimony that Jackson "was required to serve five years on the 20 year sentence" was an unambiguous legal error. Houston (or perhaps the person at the DOC who had prepared the records from which she was reading) had confused the current version of § 47-7-3 with the one that had been in effect at the time Jackson was released on parole. At the time of Houston's testimony, § 47-7-3 mandated that prisoners who had been sentenced for fewer than thirty years "serve[ ] not less than one-fourth (1/4) of the total of such term or terms." MISS.CODE ANN. § 47-7-3 (1982).[2] Under this 1/4 ratio, someone like Jackson would be required to serve at least five years of a twenty-year sentence. When Jackson was released on parole, though, a 1/3 ratio was in effect. Under the 1/3 ratio, Jackson was required to serve *at least* six years, eight months, and a day for manslaughter and *at least* one year for mayhem, for a total of seven years, eight months, and a day. However, he served some ten months less than this. Thus, the DOC released Jackson in violation of Mississippi law.

In addition, it is crucial that Jackson was sentenced to serve his three-year mayhem sentence consecutively to the twenty-year manslaughter sentence. Under applicable Mississippi law, when a court sentences a person to imprisonment on two convictions, the sentence that runs consecutively (that is, the second sentence), "shall commence at the termination of the imprisonment for the

_____

[2]This provision became effective July 1, 1982.

8

preceding conviction...." MISS.CODE ANN. § 99-19-21 (1977).[3]  In other words, Jackson could not serve any time for mayhem (let alone be paroled from his mayhem conviction) until *after* he had served the minimum required time for manslaughter.  Indeed, Houston herself testified to this point at the sentencing hearing.  She noted that

> [Jackson] would have to serve the minimum amount of time required for parole on the 20 years first.  It would be the first sentence imposed and he would have to serve the subsequent time required on the 3 years [sic] sentence before he could be considered for release.

This means that only *after* Jackson had served six years, eight months, and a day for manslaughter could he have served any time for mayhem.  It also means that the most he could have served for mayhem is one month and twenty-seven days.  Thus, clearly, Jackson has not "served separate terms of one (1) year or more" for two different convictions, MISS.CODE ANN. § 99-19-83 (1983), and the court could not have legally sentenced him under § 99-19-83 to life imprisonment without possibility of parole.  Rather, as discussed below, the court should have sentenced him to the maximum term for burglary, without possibility of parole, as required by § 99-19-81 of the Mississippi Code.

## II

It is difficult to see how the majority can avoid the force of this argument.  However, it offers two contentions.  First, the majority asserts that because Jackson was released on parole too

---

[3]Mississippi amended this provision in 1983 to permit courts to sentence people to concurrent sentences, rather than just consecutive ones.

early he cannot argue that the court illegally sentenced him to life imprisonment. However, it is precisely *because* Jackson was released on parole too early that he can make this argument. By ending Jackson's imprisonment for his mayhem conviction after he had served less than two months, the state effectively ensured that Jackson would be legally barred from being sentenced under § 99-19-83. In a similar vein, the majority claims that "the question is not how much time he *should* have served under the applicable parole statute, but rather how much time he *actually* served." But, in fact, the two questions work in tandem in this case. Since we know how much time Jackson should have served, we can calculate the *maximum* time he actually could have served on the mayhem conviction—and this maximum time is less than two months.

Second, quoting a 1985 Fifth Circuit opinion, *Seaton v. Procunier,* 750 F.2d 366, 368 (5th Cir.), *cert. denied,* 474 U.S. 836, 106 S.Ct. 110, 88 L.Ed.2d 90 (1985), the majority contends that it will assume that Houston's allocation is correct because "[w]e will take the word of [the Mississippi Supreme Court] as to the interpretation of its law." It then asserts that Jackson has failed to overcome the presumption of correctness afforded the finding that Jackson had served "one or more years on each offense." However, the state court's finding that Jackson had served "one or more years on each offense" is not a legal conclusion (though, of course, it indirectly stems from Houston's erroneous application of state law); rather, it is a factual finding. *Seaton* is not relevant. Moreover, the standard of review

10

of a state court factual finding is no longer just presumptive correctness. Rather, it can be found in § 2254(e)(1) and § 2254(d)(2) of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub.L. 104-132, 110 Stat. 1214 (1996).[4]

Section § 2254(e)(1) retains the old presumptive correctness standard of § 2254. It states that "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to a judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct." However, it then adds a new burden of proof and persuasion on the prisoner—"[t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." In addition, § 2254(d)(2) states that

> [a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim ...
>
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The record indicates that the only evidence presented in state

---

[4]Jackson filed his notice of appeal before the president signed the AEDPA into law. However, § 2254(d)(2) applies retroactively to the appeal. *See Moore v. Johnson,* 101 F.3d 1069, 1074 (5th Cir.1996) (applying § 2254(d)(2) retroactively); *cf. Drinkard v. Johnson,* 97 F.3d 751, 767-68 (5th Cir.1996) (applying § 2254(d)(1) retroactively).

This circuit has yet to decide whether the amended § 2254(e)(1) applies retroactively. But, because I believe that Jackson can prevail regardless of whether the old or amended § 2254(e)(1) pertains here, I will assume that the amended provision applies retroactively.

11

court regarding the allocation of time between Jackson's manslaughter and mayhem convictions is Houston's testimony. However, it cannot be denied that Houston's allocation is incorrect. Her statement that Jackson "was required to serve five years on the 20 year sentence" is an unambiguous legal error. Moreover, her claim that Jackson "served one year, nine months and 28 days on the three year sentence" is a pure factual error. To be released on parole for mayhem, Jackson could not have served more than one month and twenty-seven days for that conviction. Hence, her conclusion that Jackson served at least a year on both convictions is false.

Both the state circuit court and the Mississippi Supreme Court blindly relied on Houston's erroneous testimony. By examining the evidence before them and the applicable law, and using some elementary logic and arithmetic, they could have easily determined that she was wrong. The state circuit court's factual finding that Jackson served one or more years for each conviction, then, was obviously "unreasonable." Certainly, Jackson has shown clearly and convincingly that the finding is incorrect. Moreover, the state courts' decisions to uphold Jackson's life sentence without possibility of parole were based on this unreasonable and incorrect finding. The state circuit court did not cite any evidence other than Houston's testimony in making this finding, and the Mississippi Supreme Court did not mention any proof other than this testimony in upholding this finding. Thus, I believe that §

12

2254(d) does not bar us from granting habeas relief.[5]

III

While the majority's arguments in favor of affirming the district court are unpersuasive, that does not mean that the district court judgment should perforce be reversed. Jackson faces two other potential obstacles to habeas relief, both of which I

---

[5]In footnote 7 of the majority opinion, the majority asserts that I treat the question of how much time Jackson served as a "legal" one. However, as I have tried to make clear, the amount of time Jackson served for each offense is a fact, just as the total amount of time he served is a fact.

Houston testified as to both of these facts. However, her testimony on the first fact is wrong because that supposed "fact" was calculated using a statute that did not apply to Jackson. That means we do not know exactly how much time Jackson served for each offense (though obviously he served some amount of time for manslaughter and some amount of time for mayhem, otherwise he would not have been released). But our lack of knowledge of this fact does not matter. Using controlling state law, we can calculate the *minimum* time that Jackson could have served for manslaughter (the offense that must be counted first); in other words, we can figure out the lower "limit" for this fact. Then, based on this minimum amount of time for the first offense and the total amount of time Jackson served for both offenses, we can then determine that the *maximum* time Jackson could have served for the mayhem offense is less than one year; we can establish an upper limit for this fact. The state court's factual finding (based on Houston's testimony) that Jackson served at least one year on the mayhem offense exceeds this upper limit. This factual finding can only be correct if we ignore controlling Mississippi law and basic mathematics. Therefore, because the state court's finding cannot be correct, it must be unreasonable.

In response, the majority suggests that it is "equally plausible" that Jackson "mistake[nly]" served some amount of time less than six years, eight months, and a day for manslaughter and more than a year for mayhem. However, this suggestion is actually implausible. Under § 99-19-21, Jackson could not even begin his mayhem sentence until he had served at least six years, eight months, and a day for manslaughter. He could not, mistakenly or otherwise, have served at least a year for mayhem.

13

must address. *See Pongetti v. General Motors Acceptance Corp.,* 101 F.3d 435, 442 (5th Cir.1996) (stating that "reversal is inappropriate if the ruling of the district court can be affirmed on any grounds"). First, the Mississippi Supreme Court has determined that Jackson is procedurally barred under state law from seeking post-conviction relief. Assuming this procedural bar is independent and adequate, a federal court can only entertain Jackson's habeas petition if he meets the cause-and-prejudice/miscarriage-of-justice standard set forth in *Coleman v. Thompson*, 501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). Second, Jackson must demonstrate that he is, as his petition alleges, in custody in violation of either the Due Process Clause of the Fourteenth Amendment or the Ex Post Facto Clause. I examine these two issues in turn.

A

In spite of Jackson's procedural default, the district court addressed the merits of his petition because, in part, "the Mississippi Supreme Court considered the substance and merits of all of the claims in the direct appeal...." However, in his direct appeal, Jackson did not make the 1/3-ratio argument. Rather, he merely asserted, among other things, that the entire six years, nine months, and twenty-eight days he served was "one period of confinement" for purposes of § 99-19-83. In rejecting this contention, the state circuit court and Mississippi Supreme Court relied on Houston's testimony and found that Jackson had served at least one year on each conviction.

14

Unlike the district court and apparently the majority, I do not think that the Mississippi Supreme Court (or, for that matter, the state circuit court) considered the "substance and merits" of the 1/3-ratio argument in Jackson's direct appeal. Moreover, when he raised this specific contention for the first time in his application for post-conviction relief, the Mississippi Supreme Court denied it on the grounds that it was procedurally barred by § 99-39-5 of the Mississippi Code. Where a state prisoner has defaulted on his federal claims in state court pursuant to an independent and adequate state procedural rule and the prisoner then pursues federal habeas relief, a federal court may not consider such relief unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman,* 501 U.S. at 750, 111 S.Ct. at 2565. We have previously determined that § 99-39-5 represents an independent and adequate procedural rule. *Lott v. Hargett,* 80 F.3d 161, 165 (5th Cir.1996).

Jackson does not attempt to explain why he did not raise the 1/3-ratio argument earlier. Rather, he simply asserts that it would be a fundamental miscarriage of justice to require him to serve a sentence of which he is actually innocent. I agree.

The actual innocence exception set forth in *Coleman* extends to the sentencing phase of a trial. *See Mills v. Jordan,* 979 F.2d 1273, 1279 (7th Cir.1992) (ruling that the "actual innocence exception applies to habitual offender proceedings ... whether or

15

not they involve the possibility of capital punishment"); *Jones v. Arkansas,* 929 F.2d 375, 381 & n. 16 (8th Cir.1991) (holding that defendant was actually innocent of sentence under habitual offender statute where that statute did not apply); *cf. United States v. Maybeck,* 23 F.3d 888, 894 (4th Cir.1994) (finding petitioner was actually innocent of being a career offender because he had only one relevant prior felony conviction instead of the required two), *cert. denied,* --- U.S. ----, 116 S.Ct. 1555, 134 L.Ed.2d 657 (1996); *Smith v. Collins,* 977 F.2d 951, 959 (5th Cir.1993) (assuming, without deciding, that actual innocence exception is available in non-capital sentencing case), *cert. denied,* 510 U.S. 829, 114 S.Ct. 97, 126 L.Ed.2d 64 (1993). As I have shown above, § 99-19-83, by its own terms, does not apply to Jackson. Moreover, "[i]t would be difficult to think of one who is more "innocent' of a sentence than a defendant sentenced under a statute that by its very terms does not even apply to the defendant." *Jones,* 929 F.2d at 381.

In this circuit, though, Jackson must also show that he could not have received a sentence of life imprisonment without possibility of parole under a provision *other* than § 99-19-83. *See Smith,* 977 F.2d at 959 (noting that "for a defendant to demonstrate actual innocence of the sentence imposed he would have to show that but for the constitutional error he would not have been legally eligible for the sentence he received"). Jackson can do so. If the state courts had recognized that Jackson could not have served at least one year for the mayhem charge, he would have been

16

sentenced pursuant to § 99-19-81, not § 99-19-83. Under § 99-19-81, any person who has been convicted of two different felonies and "who shall have been *sentenced* to separate terms of one (1) year or more ... shall be sentenced to the maximum term of imprisonment prescribed for such felony, and such sentence shall not be reduced or suspended nor shall such person be eligible for parole or probation" (emphasis added). At the time of sentencing, the maximum term for burglary of a dwelling in violation of § 97-17-19, with which Jackson was charged and convicted, was ten years.[6] Thus, the most Jackson could have been required to serve after his third conviction was a decade, not life.

Therefore, I would determine that Jackson is actually innocent of his term of life in prison, without possibility of parole, and thus it would be a fundamental miscarriage of justice to require him to serve such a term. Accordingly, I find that we can consider granting Jackson habeas relief.

B

Another issue the majority does not raise, but which was suggested by the district court, is that Jackson's habeas claims are not cognizable under § 2254(a). Section 2254(a) requires that a prisoner allege that he "is in custody in violation of the Constitution or laws or treaties of the United States." However, Jackson *does* assert that illegally sentencing him to life imprisonment without possibility of parole violates his constitutional due process rights and the Ex Post Facto Clause. I

_____

[6]Mississippi repealed § 97-17-19 in 1996.

17

believe that Jackson's allegation that he was sentenced under the wrong state statutory provision, thereby jailing him for the rest of his life rather than for a lesser term, presents a reviewable claim under the Due Process Clause of the Fourteenth Amendment. *See, e.g., Hill v. Estelle,* 653 F.2d 202, 204 (5th Cir. Unit A) (noting that "[v]iolation of state sentencing statutes can in certain circumstances invoke the due process protections of the Constitution"), *cert. denied,* 454 U.S. 1036, 102 S.Ct. 577, 70 L.Ed.2d 481 (1981). Indeed, I find that he has met his burden in showing such a violation. *See Burge v. Butler,* 867 F.2d 247, 250 (5th Cir.1989) (holding that prisoner who was sentenced to life imprisonment without possibility of parole pursuant to a statute that under state law did not apply to his crime and who could not have been given this penalty under any applicable statute, was sentenced in violation of the Due Process Clause of the Fourteenth Amendment).

## IV

In conclusion, I would hold that Jackson's sentence of life imprisonment without possibility of parole under § 99-19-83 violated his constitutional due process rights, and I would vacate the district court's opinion. I would then grant Jackson's application for a writ of habeas corpus in ninety days if, by then, the state had failed to resentence him for the maximum term for burglary of a dwelling, without possibility of parole, as mandated

18

by § 99-19-81.[7]

<hr>

[7]I note that Jackson has already served more than thirteen years under § 99-19-83. Resentencing Jackson to a ten-year term under § 99-19-81 would necessarily mean his release from incarceration.